## NANCY H. SYMMES *versus* WILLIAM DREW *et al.*

Upon an assignment of dower, the commissioners set off to the widow the southerly half of a dwellinghouse, "that is, the southerly front room and the bedroom aback of it, with the chamber and garret over the same, and the cellar under it, with liberty to use the chamber and garret stairs and the entries," "and liberty to use the kitchen" (which was in the northerly half of the house) "for washing and cooking when she may need ; also liberty to use the yard and well." Subsequently the widow, as administratrix of her husband, being authorized to sell his real estate conveyed to a purchaser the northerly half of the same dwellinghouse &c. "being all the said dwellinghouse, yard and garden spot and buildings that were not assigned" to the widow as her dower. It was *held*, that such deed did not pass the whole of the house subject to the life estate of the widow in a part described, but only that part of the house which had not been previously set off and a life estate therein assigned to her as dower ; and that the easements in the northerly half of the house set forth in the assignment of dower, were not merely personal to the widow, but, on her death, remained annexed to the reversionary estate.

In the same case it appeared, that the only way within doors to the cellar, was through the kitchen, but that there was a way thereto outside. It was *held*, that the widow acquired no right of passage to the cellar through the kitchen, under the assignment, in the absence of any express words to that effect.

In the same case it was *held*, that the grantee of the administratrix had a right to erect a partition on the dividing line between the northerly and southerly half of the garret, although the garret consisted of a single room, and all the windows therein were on his side of the partition, there being nothing to prevent the owner of the southerly half of the garret from opening windows into his own part thereof.

THIS was an action on the case for the interruption of certain easements and privileges.

By an agreed statement of facts, it appeared, that in 1794, Isaac Symmes died seised of a dwellinghouse and land in Plymouth ; and that a portion of the house and land was, on June 12, 1794, assigned to his widow, Joanna Symmes, as her dower, which portion was described in the assignment as follows : " The southerly half of the dwellinghouse in which said deceased lived in said Plymouth, that is, the southerly front room and the bedroom aback of it, with the chamber and garret over the same and the cellar under it (with liberty to use the chamber and garret stairs and the entries, paying a proper proportion for the repairs of the same). We also assign her the small entry chamber, she allowing the improver of the other part of said house liberty to pass through it as it may be necessary ; and liberty to use the kitchen for washing and cooking when she may need. Also liberty to use the yard and well."

On November 4, 1794, Joanna Symmes executed a deed, whereby, after reciting that she was authorized as administratrix of her husband's estate, to sell a portion of his real estate for the payment of his debts, she conveyed to Ellis Holmes and Isaac Symmes, " one half of the dwellinghouse in which the said Isaac Symmes, deceased, last dwelt, being the northerly half of the same, together with the bakehouse adjoining, and also the yard and garden spot and buildings thereon standing, being all the said dwellinghouse, yard and garden spot and buildings that were not assigned and set off to Joanna Symmes, widow of the said deceased, as her dower, and that were not sold to Daniel Diman." The defendants had acquired all the title in the house, yard, &c., that was conveyed by this deed.

The plaintiff, partly by inheritance, and partly by purchase from the other heirs, became seised of the reversion before the widow's death, and continued to be so seised when this action was commenced. The widow died in December, 1834, in the occupation and enjoyment of the estate assigned in dower, and of its easements and privileges.

The first count in the declaration was for the interruption of the plaintiff's access, in doors, to the cellar. The only way to the cellar, in doors, was from the kitchen, which was in the northerly half of the house. Prior to 1834, there was but one passage way to the cellar, out doors, which was back of the house and in the southerly half thereof. In that year, a short time previous to the death of the widow, the defendants constructed a new entrance out doors, into the northerly part of the cellar. The plaintiff's access to the cellar in doors, through the kitchen, was obstructed by the defendants.

The second count was for interrupting the plaintiff's use of the kitchen for washing and cooking, and it was admitted that her use thereof for these purposes in cases of need, had been obstructed by the defendants.

The third count was for interrupting the passage of the light and air into the plaintiff's garret. The garret consisted of a single room. The defendants erected a partition on the dividing line between the northerly and southerly half thereof, all the windows in the garret being situated on the defendants' side of the partition.

Symmes
v.
Drew.

Symmes
  *v.*
D*r*ew.

The fourth count was for interruption in the use of the yard. It was admitted, that the defendants had obstructed the plaintiff in the use of the yard.

If the opinion of the Court should be in favor of the plaintiff on the first three counts, damages were to be assessed in the sum of $5 upon each, and judgment to be rendered accord ingly ; and if it should be in favor of the plaintiff on the fourth count, a new trial was to be granted. If the Court should be of opinion, that the plaintiff was not entitled to recover on any of the counts, she was to become nonsuit.

*Oct. 24th.*

*W. Thomas*, for the plaintiff, to the point, that the easements were appurtenant to the estate and not personal to the dowress, cited *Hoffman* v. *Savage*, 15 Mass. R. 130.

*Loud*, for the defendants, cited *Hoffman* v. *Savage*, 15 Mass. R. 130 ; 8 Petersd. Abr. 478, note ; *Conant* v. *Little*, 1 Pick. 189 ; *Jones* v. *Brewer*, 1 Pick. 317 ; *Gayetty* v. *Bethune*, 14 Mass. R. 56.

Shaw C. J. afterwards delivered the opinion of the Court. In order to understand the question in the present case, it is necessary to attend with some care to the facts, with a view to ascertain the intent of the parties in the conveyances referred to. The action is *case* for the obstruction of certain easements claimed by the plaintiff as appurtenant to her estate in Plymouth. It appears, that the whole estate, before the year 1794, was owned by Isaac Symmes, and that the whole of it has come to the plaintiff, except that which was sold by the administratrix for the payment of the debts of Isaac Symmes, and that all that part which was so sold, has come to the defendants. In June, 1794, dower was set off to the widow of the intestate, Joanna Symmes. In this assignment, the southerly half of the dwellinghouse was included, specially described, together with a qualified use of the kitchen, situated in the northerly part of the house, together also with the use of the yard. In November following, the widow and administratrix, having obtained license to sell a part of the estate of her intestate, for the payment of his debts, made her deed of conveyance to Ellis Holmes and Isaac Symmes, of a certain part of the estate ; and upon the construction of this deed, taken in connexion with the assignment of dower, to which it refers, the present question must be decided.

The case of *Hoffman* v. *Savage*, 15 Mass. R. 130, is relied on by the defendants, to support the principle, that the easements were annexed to the dower, that the dower was a mere carve out of the estate for the life of the widow, and that at her decease the dower itself ceased, and of course the easements annexed. But this argument, if sound, would prove too much ; it would show, that the defendants took the whole estate, subject only to the widow's dower, that when the dower was gone, the reversion being in them, the whole estate was in them, and that the easements were merged by the union of that part of the estate to which the easements were annexed with that part in which they were claimed. But this is not claimed by the defendants ; and under the deed of the administratrix, it is impossible that it could be. To that deed then it is necessary to resort, to ascertain the intent of the parties.

By that deed, the administratrix, reciting her power, conveyed to Holmes and Symmes one half of the dwellinghouse &c. being the northerly half of the same, together with the bakehouse, yard and garden spot and buildings thereon, being all the dwellinghouse, yard and garden spot and buildings that were not assigned and set off to Joanna Symmes, widow &c., as her dower. By the first clause in this description, " one half of the dwellinghouse " would have been understood, if not qualified, an undivided half. But it was qualified, by words afterwards introduced, being the northerly half. And this northerly half was not an absolute half, by mathematical admeasurement, but is explained by the subsequent description to be that northerly half which was not set off to the widow for her dower, referring to the document recorded in the probate office. It was in effect an exception out of this northerly half, of all that had been included in the assignment of dower, referring to that assignment. This deed adopted the local description in the assignment, by this reference, to the same extent as if that description had been repeated. The result of this opinion is, that the words in this latter clause of the description, were words of local designation ; that the grantor did not mean to convey the whole of the house, subject to a life estate of the widow in a certain part described, but meant to convey all that part of the house by local description, which had not

been previously set off, and a life estate therein assigned to the widow for her dower.

The whole estate had vested in the heirs by descent, liable to be devested by a sale under a license for the payment of debts. This sale did devest the estate of the heirs, and vest the same in the grantees, to the extent of the operation of this deed, but no further. Then if this description only conveyed that northerly half by local designation, which remained after setting off the southerly half, in which the dower was assigned, the legal consequence is, that the southerly half, as described in the assignment, remained in the widow and heirs, namely, in the widow for her life, with a reversion to the heirs. To this estate, making together an estate in fee, the servitudes or easements out of the northerly half were annexed; upon the death of the widow, and the consequent termination of the life estate, no merger took place, and the easements still remained annexed to the estate in the hands of the heirs. The estate consequently came to the plaintiff with those easements; and she is well entitled, upon the facts stated, to maintain her action.

As to the particular grievances complained of, they must depend upon the nature and extent of the easements reserved, to be determined by reference to the assignment.

In that assignment, we can perceive no right reserved for an in door passage to the cellar. There was a right in the kitchen to be used for the purposes of a kitchen, but not for a passage to the cellar. Such a passage was not necessary, there being an outside passage, less convenient perhaps; but no other is expressly reserved, and we can perceive none by implication. The action on the first count therefore cannot be maintained.

The second and fourth counts, being for interruptions in the use of the kitchen, and of the yard, respectively, are well maintained, these rights being expressly reserved.

The third count, being for an interruption of air and light in the garret, cannot be maintained. The right to the passages and stairways is reserved, but not to the windows. There is nothing to prevent the plaintiff from opening windows into her own part of the garret; and the defendants had a right to separate their own by a partition.

According to the agreement of the parties there is to be a

new trial to assess the damages, unless the parties agree upon the amount or upon some other mode of ascertaining them.